632

**BUTLER et al. v. D. A. SCHULTE, Inc.**

No. 7017.

Circuit Court of Appeals, Fifth Circuit.

Nov. 15, 1933.

R. B. Evins and Matt H. Murphy, both of Birmingham, Ala., for appellants.

William S. Pritchard, of Birmingham, Ala., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The Tobacco Tax Act, Acts of the Alabama Legislature approved October 22, 1932 (Gen. Acts Ala. 1932, Ex. Sess., p. 114), imposing a graduated license or privilege tax on articles including tobacco, set it at 1 cent for each package of cigarettes retailing at 5 cents, with an additional 1-cent tax for each additional 5 cents or fraction of the retail selling price.

As though the phrase "retail price" was not sufficiently definite in itself, it was undertaken by subdivision 9 of section 1 to further define it:

"(a) Whenever in this Section reference is made to any manufactured tobacco products, manufactured or imported to sell at a certain price, as the basis for computing the tax, it is intended to mean the ordinary, customary, or usual price paid by the consumer for each individual cigar, package of cigarettes, package of smoking tobacco, or any other tobacco products taxable under this Act.

"(b) When the retail or selling price is referred to in this Act as the basis for computing the amount of stamps required on any article, it is intended to mean the retail or selling price of the article before adding the amount of the tax."

The act requires the payment of the tax through the use of stamps to be affixed to the retail container. It gives each retailer twenty-four hours after receipt to affix the stamps. For its enforcement the act provides penalties to be collected by suit and makes packages not stamped as required by law seizable as contraband.

The procedure upon seizure for confiscation permits any claimant of the goods to obtain them back to be held pending the outcome of forfeiture proceedings to be institut-

ed by the solicitor of the circuit, by posting a bond in double the value of the goods, conditioned to pay their value. Plaintiff, a resident and citizen of New York, alleging that it operates two retail stores in Birmingham in which it retails Old Gold, Camels, Lucky Strike, and other standard brands of cigarettes at 10 cents per package, and that it had affixed the 2-cent stamp required by law thereto, brought this bill on March 11, 1933, against the state tax commission of Alabama and others to restrain them from confiscating the cigarettes for the failure of plaintiff to accede to the demands of the tax commission that it affix on each package an additional 1-cent stamp. This demand was grounded on the claim of the commission that though plaintiff did sell the packages at 10 cents this was not their retail price; that as actually established in the trade, it was more. It alleged that defendants were about to seize and confiscate its stock and destroy its tobacco business, and unless restrained, would do so. That if this should occur plaintiff would suffer irreparable injury not only in that its business would be destroyed, but that the defendants, each and all of them, were insolvent and unable to respond in damages. Further alleging that because of the financial condition of the state of Alabama, if appellee should pay the tax and sue for it back, it could not hope to recover it, it averred that without adequate remedy at law it was wholly dependent for relief upon the equitable jurisdiction. There was a further allegation that the state tax commissioners were discriminating against plaintiff by permitting an arrangement to be made with some dealers, which it denied to plaintiff, and a prayer to restrain their doing so, but in view of the answer and the proof this demand was not pressed below and is not before us.

The District Judge granted a restraining order pending the hearing, and the jurisdiction resting on diversity, and the injunction against the seizure being sought, not on the ground of the unconstitutionality of the statute, but of the unlawful acts of the officers, set the matter down for hearing without calling other judges to his assistance. Ex parte Hobbs, 280 U. S. 168, 50 S. Ct. 83, 74 L. Ed. 353; Ex parte Williams, 277 U. S. 267, 48 S. Ct. 523, 72 L. Ed. 877; Hawks v. Hamill, 288 U. S. 53, 53 S. Ct. 240, 77 L. Ed. 610.

On March 17 respondents appeared asserting that by retail price the statute meant the usual retail price and that the price at which plaintiff sells was not that ordinary price. That the law of Alabama requires each retailer, no matter at what price he actually sells, to affix stamps to the package in accordance with the ordinary, customary, and usual price at which cigarettes are sold. They admitted if plaintiff did not affix the additional stamp they would forthwith and immediately remove all his stock and confiscate it. They specifically denied the paragraph alleging discrimination and that went out of the case. On April 22d respondents amended their answer by pleading that a statute had been passed since the filing of the bill amending subdivision (a) of subsection 9, § 1 (Gen. Acts Ala. 1933, Ex. Sess., p. 187), so as to make it read: "(A) Whenever in this Section the word 'retail' or 'retailing' is used as the basis for computing the tax herein levied, it shall be taken to mean the retail selling price at which a majority of the retail dealers in Alabama sell at retail the articles or commodities mentioned. In determining what the retail selling price of the majority of the dealers in Alabama is for such articles or commodities, any retailer operating or being concerned in more than one retail establishment, shall be counted as one dealer without reference to the number of retail stores or establishments such dealer operates or is concerned in," and that the retail selling price of the majority of retail dealers in Alabama was more than 10 cents a package.

Plaintiff, attacking the statute as vague, uncertain, and indefinite, and void for many reasons named in its motion, moved to strike the amended answer. It also amended its bill to plead more fully the involved financial condition of the state of Alabama, that warrants issued by it could not be paid for many years, and that such warrants bore no interest. It also alleged that there were many others in the same situation as plaintiff, and that for each of the persons involved to have to sue on account of the tax would entail expensive and endless litigation.

On May 13, after hearing the oral testimony of several witnesses, the court upon the ground that the statute as originally enacted measured the tax by the price at which each package was actually sold, that under the evidence before him the amendment was too vague, indefinite and uncertain to measure it, and that complainant had no plain and adequate remedy at law under the allegations of the bill and the facts shown to exist on the hearing, granted the temporary injunction.

Appellants, attacking the decree first as wrong for the want of equitable jurisdiction, say that under the statutes of Alabama appellee has an adequate remedy at law by paying the tax and suing for it back. They say

further that no case for injunction was made out on the allegations of the bill.

■ Clear and compelling both in general and by the statutes of the United States as is the rule that where there is an adequate remedy at law, federal equity jurisdiction will not be exerted, especially in restraint of state officers, Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, Schoenthal v. Irving Trust Co., 287 U. S. 94, 53 S. Ct. 50, 77 L. Ed. 185, Northport Power & Light Co. v. Hartley, 283 U. S. 569, 51 S. Ct. 581, 75 L. Ed. 1275, and binding its corollary, that where administrative remedies are afforded the taxpayer, he must exhaust these before coming into equity, Gorham Mfg. Co. v. State Tax Comm., 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279, First Nat. Bank v. Gildart (C. C. A.) 64 F.(2d) 873; strong as are the reasons which, giving them re-emphasis in tax cases, give courts pause when applied to on constitutional grounds to restrain the collection of state revenues, Matthews v. Rodgers, supra; Stratton v. St. Louis S. W. Ry. Co., 284 U. S. 531, 52 S. Ct. 222, 76 L. Ed. 465; Henrietta Mills v. Rutherford County, N. C., 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737; First Nat. Bank v. Gildart, supra; Harjim, Inc., v. Owens (C. C. A.) 64 F.(2d) 306, and greater pause where, as here, the jurisdiction is invoked not on constitutional grounds, but on diversity of citizenship, Hawks v. Hamill, supra, at page 61 of 288 U. S., 53 S. Ct. 240, and the claim is made merely that the taxing officers are mistakenly applying the laws, United Adv. Corp. v. Lynch (C. C. A.) 63 F.(2d) 243, 245, if a case for equitable relief is made out, the jurisdiction may not be refused.

Appellee says that here is not merely a threatened collection of a tax due once, and once collectible. Here is a continuous tax applicable minutely and separately to each package of cigarettes appellee handles, and as to each package a separate penalty provided. Here is a standing threat to invade appellee's place of business, and seize its stock, and take and carry it away every time a new consignment arrives. "Can it be an answer to the claim of irreparable injury from this unlawful menace," appellee asks, "to say that after each consignment has been seized, plaintiff may bond it out, and holding it until the suit has been decided, stand suit for its value?" "What," appellee asks, "is to become of its business in the meantime while this constant warfare is going on?" It points to the fact that nothing in the statute permits it to place the bonded goods back in stock and sell them without affixing the amount of stamps demanded, for the statute requires the forfeited goods to carry the same amount of stamps as those not forfeited. It is because plaintiff will not stamp the goods, as defendants require, that this controversy has arisen. It declares it to be certain that if standing to its position that it has affixed the stamps legally required to its goods, it subjects them continually to seizure, the result will inevitably be the closing down of its tobacco business until a suit which it cannot compel the solicitor to begin, shall be filed and pressed to a conclusion, and not until the suit has gone through all the courts will it be able to resume its tobacco sales.

■ It is perfectly plain that the provision for bonding after seizure is not an administrative remedy. No part of the machinery for assessment, its procedure is directed to confiscating the property and judicially testing the validity of the tax. Failure to resort to it presents no obstacle to this suit. First Nat. Bank v. Gildart, supra, and cases cited. Does the matter stand differently as to the point most urged by defendants, that the taxpayer should not sue in equity, but pay the tax and sue for it back at law? We do not think it does. It is true that the act of 1927 (Gen. Acts Ala. 1927, p. 635) authorizes the taxpayer, when the amount or validity of any tax is in question, to pay under protest and to have a warrant from the state auditor for the amount which it shall be adjudged it has paid in excess, payable out of any state funds not otherwise appropriated. Then there is the act of 1931 (Gen. Acts Ala. 1931, p. 527), declaring that any taxes or licenses overpaid to the state tax commission by mistake should be refunded to the taxpayer by warrant on the treasury. In the Harjim and Gildart Cases, supra, we have given the principle invoked by the state application to an attempt to enjoin the collection of taxes in Mississippi and in Florida. Appellee, however, claims that a different situation exists here. It argues that there only a single tax was to be collected, the payment of which, followed by the suit to recover back, would have given plaintiff full relief. Here they say plaintiffs will not only be confronted with a multiplicity of suits, a recognized ground of the jurisdiction, since it may be sued for a penalty of $25 on each package of cigarettes not properly stamped, but it will also have its business destroyed by successive seizures and confiscations until a determination of the controversy brings peace.

Recognizing the undoubted principle that a federal court will not lightly interfere with the collection of taxes where the taxpayer has a plain, simple, and adequate remedy at law, it yet insists that the remedy by payment of the tax and suit to recover it back is not adequate here, because of the financial condition of the state of Alabama, and the depreciation of its warrants, with the certainty of their long-delayed payment with consequent loss of interest, since the refund provided for does not include interest, Nutt v. Ellerbe (D. C.) 56 F.(2d) 1058, 1062, and because under the special circumstances of this case there is no plain, adequate, and efficient remedy at law available. First State Bank v. Chicago, R. I. & P. R. Co. (C. C. A.) 63 F.(2d) 585; Roadway Express Co. v. Murray (D. C.) 60 F.(2d) 293, 297; Skagit County v. Northern Pac. Ry. Co. (C. C. A.) 61 F.(2d) 638, 86 A. L. R. 1012; Leavenworth Savings Co. v. Newman (C. C. A.) 23 F.(2d) 835; Munn v. Des Moines Nat. Bank (C. C. A.) 18 F.(2d) 269; Matthews v. Rodgers, supra.

Exacting as federal courts should be when the equitable jurisdiction is invoked to restrain state officers from collecting state revenues in requiring a showing that the jurisdiction exists, that existing, they cannot decline its exercise. We think that the facts of this case showing not the ordinary threat of proceedings to collect a specific tax on specific property by levy and distraint, but a threat of seizure and confiscation repeated over and over, as each new consignment comes in, together with the penalties for each package of cigarettes collectible by separate suits, and the fact that the result of these proceedings might well destroy plaintiff's business before it could test out the tax, differentiate this case from those in which the jurisdiction has been denied, sufficiently to support its exercise. If there was equitable jurisdiction, it goes without saying that the temporary injunction issued may not be disturbed. It is more than five months since the entry of the interlocutory decree. No reason is shown or appears why the case did not go at once to final decree so that it might come here on its merits instead of piecemeal. Further, in entire disregard of the rule that on appeals from interlocutory injunctions the merits will not ordinarily be considered, but only whether there has been an abuse of discretion in preserving the status pending hearing on the merits, City of Owensboro v. Cumberland Tel. & Tel. Co. (C. C. A.) 174 F. 739, 745; Smith v. Vulcan Iron Works, 165 U. S. 522, 17 S. Ct. 407, 41 L. Ed. 810; Mecanno, Ltd.,

v. John Wanamaker, New York, 253 U. S. 141, 40 S. Ct. 463, 64 L. Ed. 822; Alabama v. U. S., 279 U. S. 229; Ohio Oil Co. v. Conway, 279 U. S. 813, 49 S. Ct. 256, 73 L. Ed. 972; Amended Rule 12, United States Supreme Court, 286 U. S. 603 (28 USCA § 354), appellants are here not only making no showing in that regard, but not even bringing up the record by which it could be determined. Though it appears from the court's decree that the testimony of many witnesses was heard, and that this testimony influenced and determined the decision, not a line of that testimony has been brought before us. Skagit County v. Northern Pac. Ry. Co. (C. C. A.) 61 F.(2d) 638, 86 A. L. R. 1012.

The order appealed from is affirmed.