## In re CONEY ISLAND HOTEL CORPORATION. *

### No. 27147.

District Court, E. D. New York.
Dec. 24, 1934.

*Order reversed 76 F.(2d) 126.

330

Henry Rosenblum, of New York City (Abraham L. Levenson, of New York City, of counsel), for debtor.

Hughes, Schurman & Dwight, of New York City (John Fletcher Caskey and John R. McCullough; both of New York City, of counsel), for George S. Van Schaick.

Herrick & Feinstein, of Brooklyn, N. Y. (Samuel Silbiger, of Brooklyn, N. Y., of counsel), for certificate holders.

GALSTON, District Judge.

The debtor, having filed a petition for relief under section 77B of the Bankruptcy Act (11 USCA § 207), seeks possession of its property known as the Half Moon Hotel, located in Coney Island, borough of Brooklyn, from James J. McLoughlin, receiver of the debtor corporation. The debtor also seeks to restrain the superintendent of insurance of the state of New York from proceeding with a reorganization of the debtor corporation, and for an order requiring the said superintendent of insurance to file in this court a list of all the names and addresses of certificate holders owning an interest in a certain mortgage to which reference will hereafter be made.

The debtor is a New York corporation. Its principal asset is the Half Moon Hotel. On September 15, 1926, the debtor corporation executed and delivered to the Title Guarantee & Trust Company its bond in the principal sum of $1,000,000, or so much thereof as should be advanced, secured by a mortgage upon the Half Moon Hotel. The mortgage matured on October 1, 1934. Against the bond and mortgage, the title company advanced a total of $750,000, and other parties advanced $100,000; the latter holding a junior participation in the mortgage. Thereafter the interest of the title company was reduced to $690,000, and that of the junior holders increased to $160,000. As against the $690,000, the title company issued certificates of participation to 244 individual persons. The aggregate of their holding is $688,500.

With the issuance of these participation certificates, the Bond & Mortgage Guarantee Company issued its policy guaranteeing to the holders the payment of principal and interest upon that portion of the mortgage loan against which the certificates had been issued. As part consideration for the guaranty, the mortgage company was made the agent of the insured until the payment of the bond and mortgage, with the right to collect the interest and principal of the bond, and to exercise various other rights described in the guaranty policy.

Other liens against the property include a second mortgage in the principal sum of $310,000, and another in the principal sum of $514,690.11. It is thus seen that the aggregate of all the mortgage liens is $1,664,

690.11. Paramount, however, to these liens are tax liens in the sum of $98,810.50.

The interest in arrears upon the $690,-000 mortgage totals $110,200.

On June 9, 1933, the Bond & Mortgage Guarantee Company commenced an action to foreclose the first mortgage in the Supreme Court of the state of New York, county of Kings. In that action, on June 10th, James J. McLoughlin was appointed receiver of all the rents and profits of the mortgaged premises. The receiver accordingly took possession of the mortgaged premises, and is now in possession thereof. That action is now at issue, but has not proceeded to a judgment of foreclosure and sale.

On August 2, 1933, the superintendent of insurance was appointed rehabilitator of the Bond & Mortgage Company under an order of the New York Supreme Court, county of Kings, in a special proceeding brought by him for the purpose of taking possession of the property of, and rehabilitating, the mortgage company.

Acting pursuant to section 6 of chapter 745 of the Laws of 1933 of the state of New York, as amended by Laws 1934 (Ex. Sess.) cc. 906, 919 (frequently referred to as the Schackno Act), on October 31, 1934, the superintendent of insurance instituted a special proceeding for the purpose of securing judicial approval of a plan of reorganization of the mortgage investments in the aforesaid mortgage.

On November 16, 1934, the petition herein was filed pursuant to the provisions of section 77B, and on November 21, 1934, an order was made herein approving the petition as properly filed in apparent good faith.

I shall deal first with the motion to restrain the proceedings of the state superintendent of insurance under the Schackno Act. The motion is vigorously opposed on a number of grounds, all of which require discussion.

It is asserted that this court has no power to enjoin the superintendent of insurance from performing his duties under valid New York statutes. It is asserted that the District Court has no power to enjoin him except upon the ground that the statutes under which he is acting are unconstitutional or that he is acting beyond the scope of his authority. Reliance is had upon Harkrader v. Wadley, 172 U. S. 148, 19 S. Ct. 119, 43 L. Ed. 399; Hawks v. Hamill, 288 U. S. 52, 53 S. Ct. 240, 77 L. Ed. 610; Kelley v. Kavanaugh (D. C.) 3 F. Supp. 666; De Pauw University v. Brunk (D. C.) 53 F.(2d) 647.

It is also said that the Eleventh Amendment to the Federal Constitution prohibits suits against a state and against state officers. In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216.

None of these cases is pertinent, and the argument advanced ignores the provisions of article 1, § 8, of the Constitution, which empowers Congress to establish uniform laws on the subject of bankruptcy throughout the United States. Accordingly, national bankruptcy statutes are paramount to any state statute the effect of which may impair or emasculate them.

Accordingly, as between the Schackno Act and the provisions of section 77B of the Bankruptcy Act, no construction of any powers vested in the state superintendent of insurance by the Schackno Act can impair the congressional mandate. Such duties or privileges pursuant to which the superintendent of insurance acts cannot vitiate the constitutional authority vested in Congress. Stellwagen v. Clum, 245 U. S. 605, 38 S. Ct. 215, 62 L. Ed. 507.

Secondly, it is urged that, jurisdiction of the state court having attached, this court is thereby disabled from exercising any jurisdiction in the premises. The subject is one of great interest, and there is ample authority to support broadly the proposition that, under the law as it existed prior to the enactment of section 77B of the Bankruptcy Act, the United States District Courts would in such circumstances decline jurisdiction. The bankruptcy court could enjoin proceedings instituted after, but not before, the filing of a petition in bankruptcy. Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645; Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060.

But section 77B confers a very broad power, and the intent of Congress is unmistakably indicated by the following subdivisions thereof: "(a) * * * If the petition or answer is so approved, * * * the court in which such order approving the petition or answer is entered shall, during the pendency of the proceedings under this section, have *exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section.* * * *" 11 USCA § 207 (a).

Subdivision (c) (10) provides:

"In addition to the provisions of section 11 [section 29] of this title for the staying

of pending suits against the debtor, may enjoin or stay the commencement or continuation of suits against the debtor until after final decree; and may, upon notice and for cause shown, enjoin or stay the commencement *or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree.*" 11 USCA § 207 (c) (10).

"(i) If a receiver or trustee of all or any part of the property of a corporation has been appointed by a Federal, State, or Territorial court, whether before or after this amendatory Act takes effect [June 7, 1934 at 12 o'clock noon] a petition or answer may be filed under this section at any time thereafter by the corporation, or its creditors as provided in subdivision (a) of this section and if such petition or answer is approved, the trustee or trustees appointed under this section, or the debtor if no trustee is appointed, shall be entitled forthwith to possession of and vested with title to such property, and the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or prior trustee and for the payment of such reasonable administrative expenses and allowances in the prior proceeding as may be fixed by the court appointing said receiver or prior trustee." 11 USCA § 207 (i). (Italics mine.)

I agree with the writer in the Harvard Law Review, vol. 48, No. 1, November, 1934, page 55, in his conclusion that: "The provisions of section 77B conferring, without limitation, the power to 'enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate' eliminate these somewhat arbitrary limitations on the power of the reorganization court."

It may be noted, too, that in respect to the stay of suits to enforce liens pending at the time that the petition is filed there is no provision in section 77B such as appears in section 74, subds. (h), (m), and (n), of the act, 11 USCA § 202 (h, m, n), which sections relate to individual, and not corporate, debtors. Molina v. Murphy (C. C. A.) 71 F.(2d) 605; Santos v. Moreda (C. C. A.) 71 F.(2d) 608.

■ The motions are opposed also on the ground that, even if the court has jurisdiction, it should not be exercised, for the debtor, it is urged, has no sufficient property interest to entitle it to the benefit of the act; that the federal court should not interfere with the comprehensive legislative scheme for the reorganization of certificated mortgages; and for the further reason that any plan of reorganization submitted by the debtor in this court would be futile.

These objections bring to the foreground the very purpose or purposes sought to be accomplished by the legislation. The language of section 77A of the act (11 USCA § 206) is significant: "Courts of bankruptcy shall exercise original jurisdiction in proceedings for the *relief of debtors,* as provided in section 77B [section 207] of this chapter." (Italics mine.)

The moving papers in this proceeding include a balance sheet of the debtor corporation from which it appears that the value of the real estate and equipment is set up as follows:

| | |
|---|---:|
| Buildings | $ 346,699.48 |
| Land | 1,850,478.41 |
| Furniture, Fixtures and Equipment | 305,028.86 |
| Total | $2,502,206.75 |

The plan of rehabilitation proposed by the superintendent of insurance provides for the raising of funds, estimated at $110,000, to liquidate arrears of taxes and penalties, a sum of $60,000 to pay fees of various interested persons; and the certificate holders, in place of the first mortgage lien, are to receive debenture bonds bearing 5 per cent. interest, if and when earned.

On the face of the papers, therefore, it would appear that over and above the amount due the first mortgagee, $690,000, and the accrued taxes and penalties of $110,000, and the item of $60,000 referred to, there is an interest which the debtor is seeking to protect for junior mortgagees and unsecured creditors, as well as for itself. The broad purpose of the act would be defeated if the debtor were not given an opportunity to preserve this equity. Manifestly, the state court proceeding will not do so, for the Schackno Act is designed, not for the relief of the debtor and its creditors, but for the reorganization or rehabilitation of the certificate holders of a mortgage. It may well be that that act provides a comprehensive scheme for the reorganization of certificated mortgages, but there the relief stops.

I reach, then, the final argument in opposition, that any plan of reorganization submitted by the debtor in this court would be futile. That is a prophecy of despair which may or may not represent an ultimate condition. Certain it is that the petition is filed in apparent good faith and that the debtor should have a reasonable opportunity with-

in which to submit a plan of reorganization.

The motion, therefore, to stay the superintendent of insurance is granted, with this condition, however, that, if within sixty days from the entry of the order the debtor shall not have filed a plan of reorganization for submission to its creditors and give evidence of the likelihood of its adoption under the requirements of section 77B, the stay will be vacated.

As to the foreclosure suit, that also will be stayed. James J. McLoughlin, the receiver appointed in the foreclosure suit, being conversant with the affairs of the corporation and the management of the property, and enjoying the confidence of the judge who appointed him as receiver in the state Supreme Court, I shall designate as trustee in this proceeding; and he will continue to operate the property as an officer of this court from the date of the entry of the order on this motion.

There remains for consideration the question of furnishing the debtor with a list of certificate holders. The trustee is directed to procure such a list so as to expedite the submission of a plan of reorganization to certificate holders within the sixty-day limit referred to above.

Settle order on notice.