## SAUNDERS et al. v. LONDON ASSUR. CORPORATION.*

### No. 10014.

Circuit Court of Appeals, Eighth Circuit.

April 4, 1935.

FARIS, Circuit Judge, dissenting.

*Rehearing denied May 17, 1935.

Harry L. Jacobs, of Kansas City, Mo. (William G. Boatright and I. J. Ringolsky, both of Kansas City, Mo., on the brief), for appellants.

Samuel Levin, of St. Louis, Mo. (William S. Hogsett, Chester L. Smith, Ralph E. Murray, and Alvin C. Trippe, all of Kansas City, Mo., on the brief), for appellee.

Before WOODROUGH and FARIS, Circuit Judges, and DONOHOE, District Judge.

DONOHOE, District Judge.

This case involves an appeal from a judgment of the District Court quashing service of process in an action commenced in the circuit court of Jackson county, Mo. The suit was commenced by the appellants, residents of Missouri, on three certain fire insurance policies issued by the London Assurance Corporation of the United Kingdom of Great Britain and Ireland, in Chicago, Ill., on certain real property situated in said city. Process was issued and served upon the deputy superintendent of the insurance department of the State of Missouri, under and by virtue of the provisions of sections 5894 and 5895 of the Revised Statutes of Missouri 1929 (Mo. St. Ann. §§ 5894, 5895, pp. 4495, 4498). After removing the cause to the Federal District Court for the Western District of Missouri, the defendant moved to quash the summons and the return thereof. The motion was sustained on the ground that the sections of the statute above noted authorized the service of process upon foreign corporations doing business within the state only in litigation growing out of business transacted within the state.

Section 5894 is the section with which we are particularly concerned. It is quite lengthy, and I shall quote only so much thereof as is necessary for our consideration. It reads: "Any insurance company not incorporated by or organized under the laws of this state, desiring to transact any

business by any agent or agents in this state, shall first file with the superintendent of the insurance department a written instrument or power of attorney * * * appointing and authorizing said superintendent to acknowledge or receive service of process issued from any court of record. * * *"

In keeping with the provisions of this statute, the appellee had long since filed the written instrument in manner and form as required, and, at the time the action was commenced, the instrument was on file and in full force and effect. The Supreme Court of Missouri has construed and given effect to this statute in several different cases, and, that being so, its construction is binding upon the federal courts within that jurisdiction. Pennsylvania Fire Ins. Co. v. Gold Issue Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610; Louisville Railway Co. v. Chatters, 279 U. S. 320, 49 S. Ct. 329, 73 L. Ed. 711; Smolik v. Phila. Iron Co. (D. C.) 222 F. 148; Massachusetts Bonding & Ins. Co. v. Concrete Steel Bridge Co., 37 F.(2d) 695 (C. C. A. 4).

While it is earnestly urged that the construction placed by the Supreme Court of Missouri on this provision of the statute is not uniform in the different cases, and that the construction of that court is not free from confusion and doubt, a careful analysis of the more recent decisions of that court does not disclose a situation as contended. In the case of State ex rel. Pacific Mut. Life Ins. Co. v. Grimm, 239 Mo. 135, 143 S. W. 483, 492, a nonresident of Missouri commenced a suit therein upon a policy of insurance issued in a foreign state. A motion to quash the service was overruled. An original proceeding seeking a writ of prohibition. was then instituted and denied. I quote the following from the opinion denying the writ: "An examination of the statute shows that its terms are general, and authorize such service of summons in all suits brought against foreign insurance companies. I do not see that this court has any authority to limit or qualify the statute by reading into it words which would limit the right to serve a foreign company by service upon the superintendent of insurance to cases brought by resident plaintiffs, or those based upon contracts issued in this state. A foreign company can do business in the state of Missouri only upon such terms and conditions as the state may see fit to impose."

Later, in the case of Gold Issue Mining & Milling Co. v. Penn. Fire Insurance Co., 267 Mo. 524, 184 S. W. 999, 1005, which was a case wherein the plaintiff, an Arizona corporation, brought suit in Missouri against the insurance company, a foreign corporation, duly licensed and carrying on business in Missouri. The policy involved was issued in Colorado upon buildings situated there. Service of summons was had upon the superintendent of insurance. The defendant moved to quash the summons and service thereof on the ground that such service was insufficient except only in suits upon Missouri contracts. From an adverse judgment the defendants appealed to the Supreme Court. That court, after a careful consideration and review of the history of the legislation, concluded that the statute "clearly authorized the superintendent of insurance to acknowledge the receipt and service of process for any such company in any and all transitory causes of action that might be brought by any one against it in the courts of this state, except those mentioned in section 7044, R. S. 1909 [Mo. St. Ann. § 5897, p. 4499], regardless of place where the contract of insurance was entered into; and the language of this amendment is sufficiently comprehensive to embrace residents and nonresidents of the state at the time of the issuance of the policy and at the time of the institution of the suit thereon." Upon review by the Supreme Court of the United States (Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610), the decision was affirmed.

Again, in the case of State ex rel. American Central Life Ins. Co. v. Landwehr, 318 Mo. 181, 300 S. W. 294, 298, the Supreme Court of Missouri had under consideration the construction of the statute. The plaintiff was a resident of the state of Kansas. Suit was commenced in Missouri on a policy of life insurance issued by the American Central Life Insurance Company, an Indiana corporation, in the state of Kansas. Likewise, service was had and a motion to quash was overruled. Again an original proceeding in prohibition was instituted, and the provisional rule entered was made absolute. Again that court carefully reviewed the history of the legislation, and considered at great length the decisions in the Gold Issue Mining & Milling Co. v. Penn. Fire Ins. Co. and State ex rel. v. Grimm, supra. Its decision was to the effect that the statute did not authorize the maintenance of a suit in Missouri by a nonresident against a foreign insur-

ance company, licensed to do business therein, and it specifically overruled, to that extent, the decisions in the Grimm and Gold Issue Mining Co. Cases in words as follows: "The foregoing conclusion, if adopted by my Brethren necessarily results in overruling the Grimm and Gold Issue Mining & Milling Company Cases, in so far as those cases deal with the question now before us."

It is earnestly contended that the effect of the holding of the court in the Landwehr Case is to deny to residents the right to resort to Missouri courts in suits upon contracts executed elsewhere, and that the court did in effect completely overrule the Grimm Case and the Gold Issue Mining & Milling Co. Case. This contention is un-warranted, if the opinion in the Landwehr Case is considered in the light of the law as it was announced in the other cases. Note the language of the court: "It should be here noted that significance should be attached to a change from the language used in the 1869 act to the language upon the same subject used in the 1879 revision, in the 1885 act and in the subsequent revisions of our statutes. In the 1869 act the authority of the agent was continued 'for the purposes of process as aforesaid, in any action against the company, upon any policy or liability issued or contracted during the time such company transacted business in this state.' This language would leave it quite doubtful whether a resident beneficiary of a policy written outside this state could maintain an action in this state upon such policy, although the policy was outstanding in this state at the time. That this injustice occurred to the Legislature is reasonably apparent from the language, used in the 1879 and subsequent revisions, that such service upon the agent (or superintendent of the insurance department) should 'be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this state.' Policies outstanding in this state necessarily include policies written outside of this state which are owned and held by residents of this state at the time suit is instituted thereon."

But it is asserted that the language just quoted was mere obiter dictum, unjustified by the issue presented. While it is true that the precise question presented to the court was the right of a nonresident to bring suit in Missouri upon a contract executed elsewhere, the court necessarily was compelled to construe the statute as a whole in the light of the development of the law, to arrive at the intention of the Legislature, and it concluded and held that "policies outstanding in this state" necessarily included policies written outside of the state, and that to deny to resident owners of such policies the right to resort to the courts of Missouri for their enforcement would be manifestly unjust. To maintain on the authority of the Landwehr Case that a resident is without right to sue and obtain service on a foreign insurance company, licensed to do business in Missouri, upon a contract executed elsewhere, is not justified by the language of the court in that case. The court clearly preserved the right of residents to enforce their claims in their own courts.

The appellee's proposition that the power of a state to compel a foreign corporation to submit to service of process, as in the instant case, is predicated upon the power of the state to prohibit them from doing business, is supported by its authorities, but there can be no constitutional objection to the state exacting a consent from a foreign corporation to submit to any jurisdiction as a condition of doing business. Smolik v. Phila. & Reading Coal & Iron Co. (D. C.) 222 F. 148, cited with approval in Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U. S. 93, 37 S. Ct. 344, 345, 61 L. Ed. 610; Bagdon v. Phila. & Reading Coal & Iron Co., 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407, Ann. Cas. 1918A, 389. Indeed, the Supreme Court of the United States, in reviewing the decision in the Gold Issue Mining & Milling Co. Case, specifically stated: "But when a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts."

On the other hand, if we concede for the moment that the language of the court quoted is obiter dictum, and is not binding as authority within the stare decisis rule, it would not affect the holding on the question properly before the court, nor would it disturb the former holding of the court in the Gold Issue Mining & Milling Co. Case, in so far as residents of the state were concerned. As a consequence, the effect of the decision is that, by the authority of the Gold Issue Mining & Milling Co. Case, residents of the state may maintain actions on policies, no matter where issued, on property no matter where located, while, by the decision in the Landwehr

Case, nonresidents of the state may not maintain an action in the state against a foreign corporation, doing business in the state, on a contract issued without the state. The evident purpose of the language, which is said to be obiter dictum, was to make it clear that the court by its decision did not thereby overrule the Grimm and the Gold Issue Mining & Milling Co. Cases, in so far as they construed the right of residents of Missouri to maintain such actions. Examination of all of the opinions of the Supreme Court of Missouri construing this section of the statute and dealing with this question will disclose that nowhere has the right of a citizen of the state to resort to its own courts in such cases been denied or questioned, so that, if we concede that the language is dictum, does not the holding of the Supreme Court of the United States (Hawks v. Hamill, 288 U. S. 52, 53 S. Ct. 240, 242, 77 L. Ed. 610) apply?

"At least it is a considered dictum, and not comment merely obiter. It has capacity, though it be less than a decision, to tilt the balanced mind toward submission and agreement."

Having before us the construction of the statute of the highest court of the state, it necessarily controls the decision of this court, unless the construction so placed on the statute violates the Constitution of the United States. It is asserted that such construction does in fact violate section 2, article 4, thereof. The Supreme Court of the United States in La Tourette v. McMaster, 248 U. S. 465, 39 S. Ct. 160, 161, 63 L. Ed. 362, in considering this identical question, said: "This contention, that is, that the act discriminates against citizens of other states and thereby offends the Constitution of the United States, is La Tourette's ultimate reliance, and to it his counsel devote their entire argument. The state replies its power over insurance and that the legislation it justifies extends to its agents and is best executed when they are residents of the state. This view we have sustained, and manifestly to declare the legislation illegal is to put a restraint upon a power that has practical justifications."

Later, the Supreme Court in the case of Douglas v. New York, New Haven & H. Ry. Co., 279 U. S. 377, 49 S. Ct. 355, 73 L. Ed. 747, reviewed the identical argument that is made in this case, and held that it was a question of residence rather than citizenship, and that the provisions of the Constitution did not apply.

The judgment of the lower court is therefore reversed, and the cause remanded for further proceedings consistent herewith.

FARIS, Circuit Judge, dissents.