**UNITED STATES of America ex rel. Blanche Hobbs McNEILL, Appellant,**

v.

**Mesrop A. TARUMIANZ, M.D.**

**No. 12051.**

United States Court of Appeals Third Circuit.

Argued Dec. 18, 1956.

Decided March 15, 1957.

Joseph E. Finley, Washington, D. C. (Oliver V. Suddard, Wilmington, Del., on the brief), for appellant.

Frank O'Donnell, Wilmington, Del. (Richard J. Baker, Deputy Atty. Gen., on the brief), for appellee.

Before MARIS, GOODRICH and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Appellant Blanche Hobbs McNeill filed a complaint under the Civil Rights Act[1] seeking to enjoin Dr. Tarumianz, the Delaware State Psychiatrist and Criminologist, from compelling her to submit to a mental examination pursuant to a Delaware statute.[2] The complaint was dismissed in the district court upon two grounds: first, the failure to state a cause of action; and second, the immunity of Dr. Tarumianz as a state official. This appeal is taken from that order of dismissal.

Appellant's original complaint was filed *pro se*. It was superseded by the amended complaint with which we are here concerned. This purports to spell out a cause of action under 42 U.S.C. § 1983, the Civil Rights Act, based upon the following facts. On June 22, 1931, plaintiff was temporarily committed to the Delaware State Hospital for psychiatric treatment without her knowledge or consent; there is no allegation that defendant effected this commitment. She left the hospital in August of 1934. On October 1, 1937, the complaint alleges, plaintiff was arrested without a warrant at the instigation of defendant, held for several hours in a police station in Wilmington, Delaware, denied the right to counsel and was not informed of the charges against her. From there she was taken to the Delaware State Hospital where she was heavily drugged and given a spinal tap against her will. She was forcibly held there until November 27, 1937, when defendant transferred her to the Philadelphia General Hospital upon discovering that she was a resident of Pennsylvania. She was released from the Pennsylvania institution about January 10, 1938. After serving in the Women's Army Corps during World War II and subsequently residing in Montana, she returned to Wilmington, Delaware, to care for her aged mother. Paragraphs 10, 11, and 12 of the complaint contain what we have determined to be the epitome of the alleged cause of action, so we set them out verbatim:

"10. That on or about November 10, 1949, the Defendant sent one El-

1. 42 U.S.C. § 1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Section 5142(e) of Title 16 of the Delaware Code provides: "The clinic may, through the State Psychiatrist and Crim-

inologist, apply for the commitment of any person to the Delaware State Hospital at Farnhurst under any laws of the State relating to such commitments." Section 5125 of Title 16 provides that no person shall be received for permanent commitment unless a certificate shall be made by two physicians that the person in question is suffering from a mental or nervous disease. This certificate, along with an affidavit of the truth of its contents, is then filed with the superintendent of the hospital. 16 Del.Code Ann. §§ 5142 (e), 5125.

eanor VanSant, a social worker, to the home owned jointly by the Petitioner and her mother at 125 West 23rd Street, Wilmington, Delaware, and told the Petitoner in the presence of her mother that the Defendant would immediately commit the Petitioner to The Delaware State Hospital again, if the Petitioner made any statements about the Defendant; and that on or about November 20, 1949, the Petitioner was told by the Defendant that he could not permit her to live in Delaware, because he considered her mentally ill with delusions of persecution by the Defendant.

"11. That as a result of this threat the Petitioner was forced to sell the aforementioned jointly owned property and place her mother in a home for the aged, since it had become necessary for her to leave the State of Delaware, and she has thereafter suffered great financial loss and inconvenience as a result of being forced to travel and find board and lodging beyond the State of Delaware.

"12. That the Defendant has filed an affidavit in this cause of action, in which he states as follows:

" 'That as prerequisite to her admission to Delaware she should be forced to submit to a mental examination before two doctors pursuant to the provisions of said paragraph 3073 of the Revised Code of Delaware, 1935.' "

As a result of these incidents, alleges the complaint, appellant has been deprived and is still threatened with deprivation of her Constitutional rights of due process. She prays for $15,000 incidental damages and for

"injunctive relief restraining the Defendant from enforcing the unreasonable condition mentioned in paragraph 12 as a prerequisite to her admission to the State of Delaware and that he be enjoined from confining her in the State of Delaware at any time after she should return to take up residence there, unless she is given opportunity through counsel to file a Petition in the State Court of Chancery, in accordance with Section 5126 of the Delaware Code of 1953, Volume 4, whereby such Court, upon the filing of such Petition, shall issue a writ de lunatico inquirendo to the Sheriff of the County, commanding him after five (5) days to summon a jury to determine whether the Petitioner is actually sane or not."

The district court framed the issue in this manner: "Can there be a violation of the Civil Rights Act by a State official instituting an investigation and calling into play the ordinary processes of the State under a valid, constitutional and unimpeached law?" Answering this question in the negative, the district court dismissed the complaint. Appellant agrees that the position of the district court might have validity were the issue properly framed so narrowly. Appellant urges, however, that the issue was unduly constrictive because the district court ignored some essential allegations of the complaint.

As a preliminary step in this appeal then, it is of utmost importance to determine from the face of the complaint read as a whole just what threatened action by the defendant aggrieves the appellant. Specifically, we must determine whether this action is precisely the conduct allowed by statutory authorization, or whether the threats contemplate conduct outside the scope of the statute.

 Throughout this discussion we must remain acutely aware of one of the most basic of all presumptions known to the law, namely, that a public official is presumed to act in accordance with his

authority.[3] As early as 1827, the Supreme Court in President, Directors & Co. of Bank of United States v. Dandridge, 12 Wheat. 64, 69–70, 6 L.Ed. 552, said:

> " * * * It [the law] presumes, that every man, in his private and official character, does his duty, until the contrary is proved [citing cases]; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, *omnia presumuntur rite et solemnitur esse acta, donec probetur in contrarium.*"

Although the complaint must be read in a light most favorable to the plaintiff, the presumption referred to can be overcome only by a specific allegation showing clearly a threatened abuse of lawful authority. See Laughlin v. Cummings, 1939, 70 App.D.C. 192, 105 F.2d 71, 73. There is no specific allegation in this complaint that the actions threatened or even done by Dr. Tarumianz were contrary to statute. Inferences drawn from equivocal or vaguely suggestive statements of fact will not suffice. The commitment in 1937 described by the complaint might have abridged appellant's constitutional rights. It might also be, however, that every act alleged in the course of that commitment was permitted by statute. The complaint does not allege otherwise. In any event, the commitment occurring twelve years before the threats complained of here can hardly add substance to those threats.

Every indication appearing on the face of the complaint characterizes the threats as conduct which will be carried out in accordance with statutory sanction. Paragraph 12 indicates clearly that the gravamen of the complaint is simply that defendant will cause appellant to undergo a mental examination pursuant to Delaware statute should she come to that state.[4] And the argument of the appellant in this court does not seriously militate against the view that Dr. Tarumianz would not act beyond his statutory authority. Rather, the thrust of her contention is simply that the statute is so enacted that any enforcement of it by Dr. Tarumianz would effect a violation of her constitutional rights.[5]

■■ It seems clear, then, that the action of which appellant complains is precisely what Dr. Tarumianz is authorized by statute to do. Appellant endeavors to make out a cause of action here by contending nonetheless that the statute is unconstitutional, and that therefore defendant's enforcement of it is tantamount to a denial of her constitu-

3. The presumption normally applies to action already taken by the state official. It applies likewise, and with perhaps even greater force, to conduct which is merely anticipated. In First National Bank of Albuquerque v. Albright, 1908, 208 U.S. 548, 553, 28 S.Ct. 349, 350, 52 L.Ed. 614, plaintiff sought an injunction against an assessing officer fearing that his property would be unfairly assessed; there the Supreme Court said: "We cannot tell, and much more positive averments of intent than those before us would not warrant a court in prejudging, what the assessing officer will do. It is not for a court to stop an officer of this kind from performing his statutory duty for fear he should perform it wrongly. The earliest moment for equity to interfere is when an assessment has been made."

4. Appellant has advanced the untenable argument that defendant is imposing a mental examination as a condition precedent to her entry into Delaware, and thus depriving her of her constitutional right to travel across state lines. See Crandall v. State of Nevada, 1867, 6 Wall. 35, 18 L.Ed. 744. A careful reading of the complaint shows that defendant intended only to cause appellant to submit to a mental examination in the event that she comes to Delaware. He has neither the authority nor the naked power of imposing the examination as a condition precedent to her entry.

5. The argument is stated at page 10 of appellant's brief: "The Delaware statutes in effect in 1949 not only have no provisions for execution, outside of an outright unlawful seizure (which plaintiff alleges happened in 1937), but are clearly unconstitutional and leave no basis for a valid action on the part of defendant."

tional rights. This argument might have validity if this were an action at law seeking damages under the Civil Rights Act. As we have seen, however, this is an equitable action seeking injunctive relief. As a general proposition, federal courts are cautious and reluctant to issue injunctions against state officials who act under color of law, and generally only a case of manifest oppression will justify the grant of this extraordinary remedy. Hawks v. Hamill, 1933, 288 U.S. 52, 60–61, 53 S.Ct. 240, 77 L.Ed. 610; Cyclopedia of Federal Procedure (3d ed., 1952) § 73.133. The argument here goes one step further by seeking an injunction against a state official on the grounds that the state statute under which he assumes to act is unconstitutional. Section 2281 of Title 28 of the United States Code provides that only a specially constituted three-judge court may enjoin a state official from acting under a state statute on the grounds that the statute is unconstitutional. So that if the constitutionality of the statute is challenged by appellant, the district court of a single judge had no jurisdiction to hear the case.

On the other hand, if appellant concedes the constitutionality of the statute, and indeed nothing is alleged in the complaint to overcome the presumption of constitutionality, her action falls squarely within the prohibition of the Eleventh Amendment of the Federal Constitution as a suit by an individual against a state. There are various situations in which an action in form against an individual is in substance an action against the state. See Worcester County Trust Co. v. Riley, 1937, 302 U.S. 292, 296–297, 58 S.Ct. 185, 82 L.Ed. 268. It has been decided by this court that an action against a state officer seeking to enjoin him from conduct authorized by a state statute is in effect an action against the state. Central R. Co. of New Jersey v. Martin, 3 Cir., 1940, 115 F.2d 968, 972, certiorari denied, 1941, Lehigh Valley R. Co. v. Martin, 313 U.S. 568, 61 S.Ct. 943, 85 L.Ed. 1527. An opposite holding, which would nullify the effect of

a constitutional statute while not passing upon its constitutionality, would be a contradiction of reason, a usurpation of power.

The threatened action which aggrieves plaintiff is clearly action permitted defendant under Delaware statute. If appellant rested her complaint for injunction upon the statute's unconstitutionality, she has argued before the wrong forum. If the action sought to be enjoined is to be taken pursuant to a constitutional state statute, the Eleventh Amendment prohibits it.

The order of the district court dismissing the complaint will be affirmed.