BT INVESTMENT MANAGERS, INC. and Bankers Trust New York Corporation, Plaintiffs-Appellants,

v.

Gerald A. LEWIS, Comptroller of the State of Florida and Commissioner of Banking of the State of Florida, Defendant-Appellee.

No. 76–1373.

United States Court of Appeals, Fifth Circuit.

Sept. 21, 1977.

John E. Mathews, Jr., Stephen E. Day, Jacksonville, Fla., for plaintiffs-appellants.

Robert L. Shevin, Atty. Gen., William B. Corbett, Jr., Asst. Gen. Counsel, Ed Kuhnel, Gen. Counsel, Richard E. Gentry, Asst. Gen. Counsel, Tallahassee, Fla., for Legal Annex.

Before AINSWORTH and MORGAN, Circuit Judges, and LYNNE, Senior District Judge.*

---

* Senior District Judge of the Northern District of Alabama, Sitting by designation.

1. BTNYC is a New York corporation, while BTIM is a Delaware Corporation that has qualified to do business in Florida.

2. Federal Reserve Board approval is required for such "banking-related" activity by 12 U.S.C. § 1843(c)(8) and by 12 C.F.R. § 225.-4(b)(1), promulgated thereunder.

3. The amended statute, *Fla.Stat.* § 659.141(1), provides as follows:
 659.141 Control; ownership
 (1) Except as provided in subsection (3) of this section, no bank, trust company, or holding company, the operations of which are principally conducted outside this state, shall acquire, retain, or own, directly or indirectly, all or substantially all the assets of, or control over, any bank or trust company having a place of business in this state where the business of banking or trust business or functions are conducted, or acquire, retain, or own all or substantially all of the assets of, or

LYNNE, Senior District Judge:

Appellants sought declaratory and injunctive relief from a Florida statute that prohibited them from operating an "investment advisory" service in that state. The three-judge district court invoked the doctrine of abstention and dismissed the action without prejudice so that plaintiffs might have certain state law issues resolved by the courts of the State of Florida. We reverse.

## Facts

In 1972 appellant Bankers Trust New York Corporation (BTNYC), a "bank holding company" under the Bank Holding Act, 12 U.S.C. § 1841 *et seq.*, sought to establish its wholly-owned subsidiary, appellant B. T. Investment Managers, Inc. (BTIM), in the activity of "investment advisory" in the State of Florida.[1] Generally, this activity would include providing portfolio investment advice, general economic information and advice, general economic statistical forecasting, and industry studies to persons desiring such services. While BTNYC had pending before the Federal Reserve Board[2] an application for authority to establish BTIM as such an investment advisory service in Palm Beach, Florida, the Florida legislature amended a certain statute[3] so as

control over, any business organization having a place of business in this state where or from which it furnishes investment advisory services in this state. However, if a bank, trust company, or holding company directly or indirectly owning all or substantially all the assets of, or having control over, a bank or a trust company or business organization to which the restrictions and prohibitions of this section apply, having acquired such assets or control prior to becoming disqualified hereunder, shall, on or after the effective date of this section, be or become disqualified hereunder to acquire, retain, or own the same, the restrictions and prohibitions of this section shall not be enforced against it for a period which, under all the circumstances, is determined by the department to be reasonable, not exceeding two years from the effective date of this act or from the date it becomes disqualified hereunder, whichever is later, unless said period of two years is extended by the department as herein provided. The department is authorized, upon a showing of undue hardship, to extend said period

to prohibit non-Florida bank holding companies from providing investment advisory services to any person[4] in Florida.[5] Bound by a provision of the Bank Holding Act that requires the Federal Reserve Board to deny such an application when the planned activity is prohibited under the law of the "target" state,[6] the Board was obliged to deny BTNYC's application in view of the intervening Florida amendment.[7]

 Following the Federal Reserve Board's denial of their application, appellants brought suit in the Northern District of Florida under 28 U.S.C. § 2201, seeking injunctive relief from the operation of the Florida statutes in question and a declaration that the statutes violate the due process and equal protection clauses of the fourteenth amendment as well as the supremacy and commerce clauses of the United States Constitution. A three-judge district court was convened pursuant to 28 U.S.C. § 2281.[8] Pretermitting consideration of the merits of appellants' complaint, that court invoked the doctrine of abstention and accordingly dismissed the action without prejudice.[9]

of two years from time to time if it determines that any such extension would not be detrimental to the public interest, but any such extension shall not exceed one year and all thereof shall not in the aggregate exceed three years.
Also challenged is a companion statute, *Fla. Stat.* 660.10, which merely enumerates various trust powers and duties.

4. Prior to the amendment at issue, *Fla.Stat.* § 659.141(1) had merely prohibited any "bank, trust company, or holding company, the operations of which are principally conducted outside [Florida]," from acquiring or retaining all or substantially all of the assets of, or control over, "any business organization having a place of business in [Florida] where or from which it furnishes investment advisory services *to trust companies or banks* in [Florida]." (Emphasis added).

5. BTNYC applied to the Federal Reserve Board on October 3, 1972. *Fla.Stat.* § 659.141(1) was amended on November 30, 1972, to become effective on December 21, 1972.

6. 12 U.S.C. § 1846. *See Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965).

## Abstention

 The sole issue on appeal is whether the district court properly abstained in this case. Although the abstention doctrine is more properly referred to as a *collection* of doctrines,[10] the particular doctrine first articulated in *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 634, 85 L.Ed. 971 (1941), teaches that in certain federal constitutional challenges to state statutes a federal district court should exercise its discretion to stay its action pending interpretation of the challenged statute by the courts of the enacting state and thereby avoid an unnecessary federal constitutional decision. The doctrine is conceived to enhance comity within our federal system of government: by leaving to a state the interpretation of unsettled questions of that state's laws when such interpretation may dispose of a case short of federal constitutional scrutiny, unnecessary friction between state and national governments may be avoided.

 However, *Pullman*-type abstention is a narrow, judicially created exception to the general grant of federal jurisdic-

7. Federal Reserve Board Order of April 26, 1973. 59 Fed.Res.Bull. 364 (1973).

8. Although § 2281 has since been repealed, it remains effective as to pending suits. Act of Aug. 12, 1976, Pub.L.No. 94–381, § 7.

9. Appellants originally sought to appeal the three-judge court's dismissal directly to the United States Supreme Court. However, 28 U.S.C. § 1253 provides for direct appeal to the Supreme Court only from "an order granting or denying . . . an interlocutory or permanent injunction . . . ." Since the order in question merely dismissed the action on the basis of the abstention doctrine, the appeal was improvidently taken, and the Supreme Court accordingly declined to take jurisdiction. Upon remand, the three-judge court entered a fresh order from which the present appeal was taken.

10. *See generally* C. Wright, *Handbook of the Law of Federal Courts,* § 52, p. 218 (3rd ed. 1976).

tion found in article III of the Constitution.[11] Not only is there a presumption in favor of retention of federal jurisdiction once obtained,[12] it is also well established that the doctrine "contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). While it is true, as appellee points out, that the statutes here in question have yet to be construed by the courts of Florida, mere absence of judicial interpretation does not necessarily render their meaning unsettled or uncertain. Indeed, by their very terms the challenged statutes could scarcely be clearer in effect, if not in purpose [13]—that is, to rid Florida banking and trust interests of non-Florida competition in the area of investment counselling. As the Federal Reserve Board observed in denying appellants' application,[14] there is simply no plausible construction of the challenged statutes under which appellants might be permitted to conduct their proposed business in Florida.

▆▆ Thus, without more, abstention in the present case would appear improper. Appellee, however, contends that since the Florida Constitution contains a provision equivalent to the due process clause of the fourteenth amendment to the United States Constitution,[15] the district court properly abstained in view of the possibility that *state* constitutional scrutiny by the courts of Florida might obviate the necessity of a federal constitutional decision.[16] While appellee's position is not without support in this particularly problematic subcategory of *Pullman*-type abstention cases,[17] we find the instant case controlled by the Supreme Court's holding in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), that where a state statute can be challenged under essentially identical state and federal constitutional provisions, abstention is improper.

▆▆ The three-judge court alternatively based its abstention on the proposition found in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and a line of cases thereunder,[18] that a federal court should refrain from exercising its jurisdiction in order to avoid needless conflict with the administration by a state of its own affairs." [19] Although *Burford*-type abstention shares with *Pullman*-type abstention the goal of "comity" in the broadest sense, the two doctrines differ sub-

**11.** *Cf. Cohens v. Virginia,* 6 U.S. (Wheat.) 264, 19 U.S. 264, 5 L.Ed. 257 (1821).

**12.** *See Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *Propper v. Clark,* 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949).

**13.** Reviewing the circumstances of the enactment of the amendment to *Fla.Stat.* § 659.-141(1), the Federal Reserve Board minced no words in characterizing the Florida legislature's action as a brazen attempt to prevent out-of-state competition. *See* Federal Reserve Board Order of April 26, 1973, 59 Fed.Res.Bull. 364 (1973). Indeed, in view of appellee's role in blocking approval of appellant's application, appellee's suggestion in the present context that the challenged statutes might not apply to appellants is, frankly speaking, incredible.

**14.** *Id.*

**15.** *Fla.Const.* art. I, § 9. This provision has been held by the Supreme Court of Florida to be coextensive with the due process clause of the fourteenth amendment. *See Georgia S. & F. Ry. Co. v. Seven-Up,* 175 So.2d 39 (Fla.1965).

Appellee contends that *Fla.Const.* art. I, § 2 also affords appellants adequate state constitutional protection as the equivalent of the equal protection clause of the fourteenth amendment, while appellants counter that such provision applies only to natural persons. In view of our holding, we need not confront this issue.

**16.** Although appellants have scrupulously avoided raising state constitutional issues, abstention, where proper, is not to be avoided by skillful casting of a plaintiff's complaint. By its nature, the abstention issue is raised either by a defendant or by the court *sua sponte. See, e. g., Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

**17.** *See, e. g., Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1969).

**18.** *E. g., Alabama Pub. Serv. Comm'n v. Southern Ry. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

**19.** C. Wright, *supra* note 10, at 222.

stantially in both purpose and effect. While the purpose of *Pullman*-type abstention is to avoid unnecessary federal constitutional challenge to state law, a court invoking *Burford*-type abstention essentially defers to a state's overriding interest in the matters *sub judice* and, concomitantly, to the superior competence of the state's courts to adjudicate such matters. Thus, usually at issue in *Burford*-type cases are state regulatory matters [20] such as regulation of natural resources,[21] education,[22] or eminent domain,[23] where a paramount state interest is apparent,[24] where the history of state judicial experience in the area indicates special reliability,[25] or, even absent an established regulatory scheme, where the intrusion of federal adjudication might handicap state government.[26] Unlike *Pullman*-type abstention, *Burford*-type abstention requires neither the presence of a state issue nor unclarity in pertinent state law. Rather, a court abstaining under *Burford* relegates a federal issue to state court adjudication because the federal issue touches some overriding state interest such as those just described. Moreover, rather than merely stay its proceedings pending state court adjudication, as in a *Pullman*-type case, a federal court abstaining under *Burford* normally dismisses the case.[27]

Without considering whether a case may be suitable for abstention under both the *Pullman* and *Burford* doctrines, we find *Burford*-type abstention improper in the present case. Although the challenged statutes are part of a large and perhaps complex regulatory scheme—*i. e.*, the Flori-

da Banking Code—it must be remembered that appellants focus their attack upon a single statute [28] whose possible invalidation could scarcely be expected to disrupt Florida's entire system of banking regulation. In this context we discern no overriding state interest, special state competence, or threat to Florida's administration of its own affairs that would warrant denying appellants access to their chosen federal forum and relegating their various federal claims to the courts of Florida.

Having found neither basis of abstention relied upon by the three-judge district court to be proper, we reverse and remand for that court's consideration of the merits of appellants' complaint.

REVERSED and REMANDED.

---

**20.** *E. g., Alabama Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

**21.** *E. g., Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968).

**22.** *E. g., Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 383–84, 69 S.Ct. 606, 93 L.Ed. 741 (1949).

**23.** *E. g., Martin v. Creasy*, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959).

**24.** *Id.*

**25.** *See, e. g., Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741 (1949);

*Pennsylvania v. Williams*, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841 (1935).

**26.** *See e. g., Scott v. Germano*, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965).

**27.** C. Wright, *supra* note 10, at 218; Bezanson, *Abstention: The Supreme Court and Allocation of Judicial Power*, 27 Vand.L.Rev. 1107, 1121–27 (1974).

**28.** Although *Fla.Stat.* §§ 659.141(1) and 660.10 are both attacked, § 660.10 merely enumerates various trust powers and duties and is attacked only insofar as it complements § 659.141(1).