PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS, Crittenton Hastings House & Clinic, Phillip G. Stubblefield, M.D., Jane Doe, and all others similarly situated, Plaintiffs,

v.

Francis X. BELLOTTI, Attorney General of the Commonwealth of Massachusetts; Alfred L. Frechette, M.D., Commissioner of Public Health of the Commonwealth of Massachusetts; Newman Flanagan, District Attorney of the County of Suffolk, in that capacity and as a representative of a class of the District Attorneys of all other Counties; Arthur Mason, Administrative Chief Justice of the Trial Court of Massachusetts; Thomas R. Morse, Chief Justice of the Superior Court Department; and Michael J. Donovan, Clerk of Suffolk Superior Court, their agents, successors, those acting in concert with them, and all others similarly situated, Defendants.

No. Civ. A. 80–1166–MA.

United States District Court, D. Massachusetts.

Feb. 11, 1985.

John H. Henn, Sandra L. Lynch, Foley, Hoag & Eliot, Boston, Mass., for plaintiffs.

Stephen S. Ostrach, Asst. Atty. Gen., Government Bureau, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is a class action for declaratory and injunctive relief in which the plaintiffs allege that Section 12S of the Massachusetts abortion statute, Mass.Gen.Laws ch. 112 § 12S, is unconstitutional as administered and as applied. Section 12S governs *inter alia*, judicial authorization for minors' abortions.

The class plaintiffs are Planned Parenthood League of Massachusetts, Crittenton Hastings House and Clinic, Phillip G. Stubblefield, M.D. and Jane Doe, an unmarried pregnant woman under the age of 18 (hereinafter referred to collectively as Planned Parenthood or plaintiffs). The class defendants are comprised of two groups. One group of defendants was named when this action was first brought in federal court in 1980. These "original defendants" are Francis X. Bellotti, the Attorney General of Massachusetts; Alfred L. Frechette, M.D., former Massachusetts Commissioner of Public Health; and Newman Flanagan, District Attorney of Suffolk County.

The second group of class defendants, the "judicial defendants," were named in 1984 through Planned Parenthood's motion to amend the complaint. The judicial defendants are Arthur Mason, Administrative Chief Justice of the Trial Court of Massachusetts and Thomas R. Morse, Chief Justice of the Superior Court Department. These individuals are representative of all judges authorized to hear minors' abortions petitions under Section 12S. In addition, the judicial defendants include Michael J. Donovan, Clerk of Suffolk Superior Court. Mr. Donovan is named as a representative of all clerks authorized to process minors' abortion petitions under Section 12S. Relief is authorized by 42 U.S.C. § 1983 and 28 U.S.C. § 2201. Jurisdiction is proper under 28 U.S.C. §§ 1343(a)(3) and 1331.

## I. *Background*

Section 12S sets forth the process through which minor women obtain consent before securing an abortion. Under the statute, women below age 18 who seek an abortion in Massachusetts must obtain parental consent. If a minor woman does not obtain parental consent, however, Section 12S establishes a procedure through which the minor may petition a judge of the Superior Court Department for judicial consent. After a prompt hearing, the statute provides that a judge may authorize a physician to perform an abortion on the minor. Judicial authorization is sufficient if the minor's parents have refused to consent to the abortion, or if the parents are unaware of the minor's desire to obtain an abortion.

This federal court challenge to the constitutionality of Section 12S was first launched in 1980. At that time, the plaintiffs named only the original defendants in their complaint. In 1980, the plaintiffs argued that Section 12S was unconstitutional on its face under both United States and Massachusetts constitutions. The plaintiffs requested a preliminary injunction from this Court to prevent the statute from becoming effective. After a three day hearing in August, 1980, this Court refused to grant a preliminary injunction and issued a *Memorandum of Decision. Planned Parenthood League of Massachusetts v. Bellotti,* 499 F.Supp. 215 (D.Mass.1980). On appeal, the First Circuit affirmed in part and also refused to issue an injunction blocking the implementation of the Section 12S consent scheme.[1] 641 F.2d 1006 (1st Cir.1981).

On April 16, 1981, after the First Circuit's decision, Planned Parenthood filed an action in the Massachusetts state court which challenged the facial constitutionality of Section 12S under the Massachusetts constitution. *Planned Parenthood League of Massachusetts v. Flanagan,* (formerly S.J.C. No. 81–124; transferred and presently Suffolk Superior No. 48796) (hereinafter *Flanagan* ). Through their state court action the plaintiffs sought an injunction from the Supreme Judicial Court of Massachusetts to prevent Section 12S from becoming effective. After a hearing before the full bench of the Supreme Judicial Court on April 22, 1981, the plaintiffs' request for injunctive relief was denied. As a result, Section 12S went into effect on April 23, 1981.

Subsequently, in May, 1981, Planned Parenthood amended its *Flanagan* complaint to raise as applied challenges to the administration of Section 12S by the Superior Courts. On June 16, 1981, in response to a request from Planned Parenthood, Supreme Judicial Court Associate Justice Paul Liacos issued a "Memorandum Under the General Superintendency Power Concerning the Implementation of St.1980, Chapter 240, Inserting G.L. Chapter 112, Section 12S." The Liacos memorandum articulated several suggested guidelines for the processing and determination of minors' abortion petitions in the Massachusetts superior courts.[2]

After the Liacos memorandum was issued, the *Flanagan* case was transferred to Suffolk Superior Court. In that forum, the parties agreed to an order issued by Judge Morse which requires clerks of the various superior courts in Massachusetts to maintain statistical records on the operation of Section 12S. These records reflect

---

1. The First Circuit affirmed this Court's decision to uphold the parental and judicial consent provisions in Section 12S. However, the appeals court did invalidate parts of Section 12S in 1981. Those provisions were a 24 hour waiting period and a requirement that a consent form include a description of the fetus' development. Circuit Judge Campbell authored a dissenting opinion on the court's decision to strike down the fetal description requirement. 641 F.2d 1006, 1028 (Campbell, J. dissenting in part).

2. In August, 1980, the Administrative Justice of the Superior Court Department of the Massachusetts Trial Court had also issued guidelines for the implementation of the Section 12S judicial consent scheme in the superior courts. Standing Order 12–80 (effective September 3, 1980) established uniform procedures for the processing of minors' abortion petitions. The Standing Order was reprinted in its entirety in the First Circuit's opinion, 641 F.2d at 1025–26.

the number of minors' abortion petitions processed, the length of time involved, the number of trips a minor must make to a court house, and other facts pertinent to the administration of the judicial consent procedure established in Section 12S. Judge Morse's order also requires that the statistical information be made available to Planned Parenthood's counsel.

According to Planned Parenthood, since the day Section 12S went into effect, they have monitored the statute's operation closely. Using the information obtained under Judge Morse's order in the *Flanagan* case, and through their own inquiries, the plaintiffs have gradually assembled the facts which they feel are sufficient to challenge the constitutionality of Section 12S as implemented. For example, they allegedly have discovered instances of undue delay, and, in their opinion, harassment and judicial misconduct in the processing of minors' abortion petitions under Section 12S.

The instant federal court action against the judicial defendants represents the culmination of the plaintiffs' fact-finding and data collection regarding the operation of the Section 12S judicial consent process. For example, Planned Parenthood has filed an affidavit with this Court which describes how at least one Superior Court judge engaged in lengthy questioning of a minor which may have reflected the judge's own moral or religious beliefs. Planned Parenthood now claims that the judicial consent scheme is unconstitutional as applied or implemented by the judicial defendants. Through the instant federal action, Planned Parenthood seeks a declaration and order from this Court that such judges are "de facto unavailable" for Section 12S proceedings. *Affidavit of John H. Henn in Opposition to Judicial Defendants' Motion to Dismiss* at 9. In short, Planned Parenthood's counsel has informed this Court that the plaintiffs "seek findings as to the facts regarding delay and burden and then seek

declaratory relief against those responsible for implementing the system and injunctive relief against those responsible for enforcing § 12S." *Id.* at 10.

This action is presently before this Court on the judicial defendants motion to dismiss. They oppose Planned Parenthood's complaint seeking declaratory and injunctive relief on numerous grounds. The judicial defendants have advanced arguments based on such diverse theories as judicial immunity, failure to state a valid cause of action, absence of a constitutionally mandated case or controversy, failure to satisfy the requirements for equitable relief, abstention and dismissal under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Despite the variety of their theories, the judicial defendants have articulated a theme which they maintain is the foundation upon which all of their legal arguments are constructed. Namely, they asked this Court to consider whether a federal court may "sit as a superjudge over an entire state judicial system?" *Defendants' Memorandum in Support of Motion to Dismiss* at 6. Planned Parenthood has opposed the judicial defendants' motion to dismiss through a memorandum and the affidavit of Planned Parenthood's counsel, John Henn.

With this recitation of the background of this action in mind, I turn to a discussion of judicial defendants' motion to dismiss.

## II. *Discussion*

### A. *Federal-State Relations*

#### 1. *The Relevance of Federalism*

The judicial defendants have characterized Planned Parenthood's action against them as one which endangers the delicate relationship between our National Government and the several states.[3] The balance of power that exists between our sovereign states and the federal government forms

---

**3.** At the outset, it must be emphasized that the motion to dismiss before this Court pertains to the judicial defendants only. Therefore, while the amended complaint names both the original defendants and the judicial defendants, this dis-

cussion is confined to Planned Parenthood's action against the judicial defendants. *See* Judicial Defendant's *Memorandum in Support of Motion to Dismiss* at 4, n. 5.

the unique basis for our system of government under the United States Constitution. In this case, the judicial defendants claim that Planned Parenthood is disrupting this balance by asking this Federal Court to supervise the operation of the state courts through its equitable power. For this reason, the judicial defendants have petitioned this Court to employ principles of federalism and comity as it considers the propriety of Planned Parenthood's action against them, and concomitantly, the viability of the judicial defendants' motion to dismiss.

Planned Parenthood on the other hand, has characterized the judicial defendants' federalism argument as a "red herring." Plaintiffs' Memorandum, *supra*, at 1. They reject the idea that through this action, they will impair federal-state relations or seek to have this Court supervise a branch of the state judiciary. According to the plaintiffs, no federalism problem is presented because, after prevailing on the merits of this "as implemented" attack on the constitutionality of Section 12S, they do not envision specific injunctive relief against members of the Massachusetts judiciary. *See* Henn Affidavit, *supra*, at 8. Rather, they seek a declaration that the judicial consent system established by the statute is unconstitutional as applied by the defendants. In the wake of such declaration, however, Planned Parenthood does envision injunctive relief against class defendants responsible for enforcing Section 12S. *Id.* at 10. Thus, Planned Parenthood argues with some finesse that in the absence of a request for specific injunctive relief against the judicial defendants, this Court should not concern itself with issues of federalism.

Contrary to Planned Parenthood's view, however, this Court's decision to explore the federalism issues posed by this action is not determined by whether or not injunc-tive relief will issue against a state judge. Even if the plaintiffs' argument that no specific injunctive relief will be sought against the judicial defendants is accepted,[4] the maintenance of appropriate federal-state relations is still an issue before this Court. Indeed, the Supreme Court stated in a recent case involving a federal action against a member of Virginia's judiciary that principles of federalism and comity should be considered by a federal court regardless of whether the target of any injunctive relief is a state judicial officer.

In *Pulliam v. Allen*, —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), the Supreme Court ruled that federal courts had the power to issue injunctions against state judicial officers under 42 U.S.C. § 1983. In deciding that case, the Court was asked to consider the impact its ruling might have on "the proper functioning of federal state relations." *Id.* 104 S.Ct. at 1979. Specifically, the magistrate enjoined in *Pulliam* argued that the independence of the state judiciary would be in peril if a federal court, through its injunctive power, "could sit in constant supervision of the actions of state judicial officers." *Id.* Accordingly, the magistrate petitioned the court to consider the danger such equitable supervision would pose to traditional notions of federal-state relations under the doctrine of judicial immunity. *Id.*

The Supreme Court, however, refused to view the federalism problem raised by federal court injunctions against state judicial officers as a concern rooted solely in traditional principles of judicial independence or the doctrine of judicial immunity. Rather, in the court's view, "intrusion into the state process would result whether the action enjoined were that of a state judge or of another state official." According to the Court, federal court intervention should be "addressed as a matter of comity and fed-

---

**4.** The precise form of relief sought by Planned Parenthood is by no means clear. Although Planned Parenthood argues for purposes of this motion to dismiss that they will not seek injunctive relief against the judicial defendants, this position is difficult to reconcile with the "Plaintiffs' Motion to Amend Complaint." In that document, Planned Parenthood stated, "Plaintiffs' claims of unconstitutionality rely in part on the actions of those judges and clerks, the relief accorded herein may include specific relief against judges as a class and clerks as a class." Plaintiffs' Motion to Amend Complaint at 3.

eralism independent of principles of judicial immunity." *Id.* Next, citing *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the court stated "[w]e reaffirm those principles and the need for restraint by federal courts called on to enjoin the actions of state judicial officers." *Id.* 104 S.Ct. at 1979–1980.

■ In the instant case, therefore, regardless of the dispute between Planned Parenthood and the judicial defendants over how far and to whom the requested injunctive relief may reach, *Pulliam* teaches that this Court is obligated to consider principles of federalism and comity. Federalism considerations are triggered not by the target of Planned Parenthood's requested relief, but by the nature of Planned Parenthood's action. Having failed in their attempt to strike down Section 12S on its face, Planned Parenthood now attacks the *process* through which this state statute is administered and implemented. The defendants in this action are state law enforcement officials, a state administrator and most recently state judicial officers. What Planned Parenthood seeks, therefore, is what the *Pulliam* Court termed a federal "intrusion into the state process." *Pulliam v. Allen, supra,* at 1979. Accordingly, as a federal court, this Court must consider principles of federalism and comity before acting. More precisely, it must be determined in the case at bar whether the intrusion into the state judicial process sought by Planned Parenthood must necessarily come from a federal court. Or, whether it is more appropriate to exercise the "restraint" recommended by the Supreme Court in *Pulliam*.

### 2. *Federalism, Comity and the Judicial Defendants*

■ Presently, in deciding this motion to dismiss, this Court must employ principles of federalism and comity as it considers the viability of Planned Parenthood's federal action against the judicial defendants. An examination of this action reveals federalism and comity concerns at two levels. First, the subject matter of the suit is the state's superior courts' method of processing minors' petitions for judicially sanctioned abortions under Section 12S. Traditionally, the operation of a state's judiciary has been an area of substantial state interest. Second, Planned Parenthood has brought a parallel action in the state court challenging the application of the Section 12S judicial consent scheme in the superior courts. *Flanagan, supra.* Under principles of federalism and comity therefore, given the existence of an ongoing parallel state proceeding, this Court must determine whether Planned Parenthood's action against the judicial defendants would be more appropriately adjudicated in the state system.

Perhaps the best articulation of the principles of federalism and comity that this Court must employ is found in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In that landmark case, the Supreme Court offered a definition of what it subsequently termed a "vital consideration." *Huffman v. Pursue Ltd.*, 420 U.S. 592, 601, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482 (1975). In *Younger*, the court explained:

> The notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of state governments, and a continuance of the belief that the National Government will fair best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger v. Harris, supra,* 401 U.S. at 44, 91 S.Ct. at 750. According to the Court, this fundamental concept "for lack of a better and clearer way to describe it is referred to by many as 'Our Federalism'...." *Id.* In the Supreme Court's view, the practical application of "Our Federalism" meant that "the National Government, anxious though it might be to vindicate and protect federal rights and federal

interests always endeavors to do so in ways that will not interfere with the legitimate activities of the states." *Id.* These pronouncements in *Younger* have subsequently formed the core of the Supreme Court's federalism analysis when federal intrusion into the operation of state institutions has been challenged. *See, e.g., Middlesex County Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Judice v. Vail,* 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977); *Huffman v. Pursue Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

The state institution which is the subject of the instant matter is the Massachusetts judiciary. Planned Parenthood contests the actions of superior court judges and superior court clerks and their implementation of the Section 12S judicial consent scheme. Planned Parenthood grounds its complaint on instances of alleged harassment and obtrusion by judges authorized to hear minors' petitions under Section 12S. In addition, according to the plaintiffs, the clerks are responsible for undue delay in the processing of Section 12S petitions.

Under established principles of federalism and comity, the federal system has recognized that states have a particularly significant interest in controlling the operation and integrity of their judicial systems. *Middlesex County Ethics Comm'n, supra,* 457 U.S. at 432, 102 S.Ct. at 2521; *Judice, supra,* 430 U.S. at 335, 97 S.Ct. at 1217; *Dostert v. Neely,* 498 F.Supp. 1144, 1153 (S.D.W.V.1980). Indeed, a state's ability to maintain the integrity of its own judicial system has been deemed to be "of paramount importance to the state." *Gordon v. Crouchley,* 554 F.Supp. 796, 799 (D.R.I. 1982). Therefore, employing notions of federalism, given the important state interest involved, federal courts have referred challenges to the functioning of a state judicial system to state courts. *Middlesex County Ethics Comm'n, supra,* 457 U.S. at 432, 102

S.Ct. at 2521; *Judice, supra,* at 335 (principles of federalism and comity annunciated in *Younger* and *Huffman* apply to an action under 42 U.S.C. § 1983 against state judges).

■ The preference for state court disposition of matters concerning the operation of a state judiciary is even more compelling when a parallel action involving the same issues is pending in the state system. *Gordon v. Crouchley, supra,* at 799 citing *Lake Carriers' Ass'n v. McMullan,* 406 U.S. 498, 509–11, 92 S.Ct. 1749, 1756–57, 32 L.Ed.2d 257 (1972). Federalism and comity require that federal courts recognize a state judiciary's ability to decide identical issues in an ongoing case in the state system. *See generally Judice, supra,* 430 U.S. at 335, 97 S.Ct. at 1217 ("A State's interest in the contempt process through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it is surely an important state interest.") and *Huffman, supra,* 420 U.S. at 604, 95 S.Ct. at 1208 ("relevant considerations of federalism ... counsel more heavily toward federal restraint since interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies."); *see also Trainor v. Hernandez, supra,* 431 U.S. at 440, 444–46, 97 S.Ct. at 1916, 1918–19 and *Younger v. Harris, supra,* 401 U.S. at 43–47, 91 S.Ct. at 750–752. Respect for the state judicial process not only eliminates needless conflict between the federal and state systems, it also *"precludes* any presumption that state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Comm'n, supra* 457 U.S. at 431, 102 S.Ct. at 2521 (emphasis in original).

■ In the instant case, therefore, the general principles of federalism and comity gleaned from cases involving federal court

challenges to the operation of a state's judicial system counsel federal restraint for two reasons. First, the subject matter of Planned Parenthood's action against the judicial defendants is the manner in which superior court judges and clerks process minors' abortion petitions under Section 12S. Because the action focuses on alleged unconstitutional practices within the state judiciary, federal case law suggests that the subject of Planned Parenthood's action is an area of intense state interest. This state interest is also evidenced by Mass. Gen.Laws ch. 211 § 3. Through this statute, the Massachusetts Legislature authorized the Massachusetts Supreme Judicial Court to superintend the operation of the state court system and correct all abuses.

Second, federal court restraint under principles of federalism and comity is implicated because Planned Parenthood filed a parallel action which is currently pending in state court. The *Flanagan* case is an "as applied" challenge to the administration of the Section 12S consent scheme by the superior courts. In that state case, Judge Morse has already begun to address the operation of Section 12S in the superior courts by issuing his order requiring the compilation of statistics regarding the judicial consent procedure. Moreover, the state court must be viewed as a competent forum in which to adjudicate federal constitutional claims. Thus, there is no question that Planned Parenthood may raise arguments under the federal constitution as well as the Massachusetts constitution in the *Flanagan* case. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

In sum, therefore, given the subject of the instant action and the existence of a pending parallel state action, serious federalism issues are presented. Accordingly, this Court must exhibit the "restraint" recommended by the Supreme Court in *Pulliam v. Allen* before reaching the merits of the complaint. *See Pulliam, supra,* 104 S.Ct. at 1980. This same restraint was prescribed for these circumstances by Justice Cardozo over 50 years ago. In *Hawks v. Hammill*, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933), Cardozo stated:

Caution and reluctance there must be in any case where there is the threat of opposition, in respect of local controversies, between state and federal courts. Caution and reluctance there must be in special measure where relief, if granted, is an interference by the process of injunction with the activities of state officers discharging in good faith their supposed official duties.... Reluctance there has been to use the process of federal courts in restraint of state officials, though the rights asserted by the complainants are strictly federal in origin.

*Id.* at 60–61, 53 S.Ct. at 243.

The judicial defendants have supplied this Court with several theories upon which to ground its restraint.[5] The theory which is specifically tailored to effectuate judicial restraint based on the federalism and comity issues presented in this case, however, is the doctrine of abstention.

### B. *Abstention*

█ The abstention doctrine allows a federal court to refrain from exercising its jurisdiction over certain disputes. Because a federal court, ordinarily, has a duty to decide cases properly before it, a decision to abstain is "the exception not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstance where the order to the parties to repair to State court would clearly serve an important countervailing interest." *Id. quoting*

---

5. The judicial defendants have offered several alternative arguments: failure to state a valid cause of action; absence of a constitutionally mandated case or controversy; failure to state a claim upon which relief may be granted; and several types of abstention. Because abstention will lead to dismissal of this case, it is not necessary to pass on the validity of those other alternative arguments.

*County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).

■ The "important countervailing interest" which lies at the heart of the abstention doctrine applied in the federal courts is federalism. In a landmark abstention decision, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court explained how a proper regard for federal-state relations must trigger a federal court's equitable discretion to abstain:

> Few public interests have a higher claim upon the federal chancellor than the avoidance of needless friction with state policies, ... These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts exercising a wise discretion, restrain their authority because of a scrupulous regard for the rightful independence of the state governments and for the smooth working of the federal judiciary.... This use of equitable powers is a contribution of the courts in furthering the harmonious relations between the state and federal authority without the need of rigorous congressional restriction of those powers.

*Id.* at 500, 501, 61 S.Ct. at 645.

The abstention doctrine has been applied in several contexts. For example, federal courts abstain when the constitutionality of a state law is challenged in a federal court before a state's highest court has an opportunity to review the particular statute. *See, e.g., Railroad Commission of Texas v. Pullman Co., supra.* In addition, a federal court may abstain when it is faced with a matter involving an area of substantial state interest where federal intervention, should it occur, would result in a disruption of a state's ability to administer its own affairs. *See, e.g., Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Abstention is also appropriate when a federal court is asked to enjoin an ongoing state judicial proceeding in the ab-

sence of certain extraordinary circumstances. *See, e.g., Middlesex County Ethics Comm'n, supra,* and *Younger v. Harris, supra.* Finally, abstention may be proper "due to the presence of a concurrent state proceeding for reasons of wise judicial administration...." *See, e.g., Colorado River Water Conservation District v. United States, supra* 424 U.S. at 818, 96 S.Ct. at 1246.

In the instant case, the judicial defendants have supported their motion to dismiss with abstention arguments based on *Younger, Burford,* and *Colorado River.* Planned Parenthood has argued that none of these abstention theories are applicable to this action.[6] Contrary to Planned Parenthood's view, however, the federalism and comity concerns discussed above render the abstention doctrine applicable to their action against the judicial defendants.

In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) the Supreme Court relied on principles of federalism and comity to articulate a distinct abstention theory. *Burford* abstention is particularly fitting for this case. This abstention theory addresses the federalism concerns raised by Planned Parenthood's action against the state judicial defendants. Specifically, it enables this Federal Court to defer to Massachusetts' important state interest in controlling the operation of its superior court system. Furthermore, *Burford*-type abstention also recognizes the disruption that would occur if this Court employed its equitable power to intervene in the internal workings of the Massachusetts Superior Courts and thus vitiate the Supreme Judicial Court's superintendency power under Mass.Gen.Laws ch. 211 § 3.

Near the outset of its opinion in *Burford,* the Supreme Court framed the theory behind *Burford* abstention:

> Although a federal equity court does have jurisdiction of a particular proceeding; it may, in its sound discretion, whether its jurisdiction is invoked on the

---

6. As recently as January 18, 1985, Planned Parenthood filed a supplementary submission con-

cerning the applicability of the *Colorado River* doctrine to this case.

ground of diversity of citizenship or otherwise, "refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest;" for it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state government in carrying out their domestic state policy."

*Burford, supra,* at 317–18, 63 S.Ct. at 1099 quoting *United States v. Dern,* 289 U.S. 352, 360, 53 S.Ct. 614, 617, 77 L.Ed. 1250 (1933) and *Pennsylvania v. Williams,* 294 U.S. 176, 185, 55 S.Ct. 380, 385, 79 L.Ed. 841 (1935). Applying this theory to the facts of *Burford,* the Supreme Court ruled that a federal court should have dismissed a request for injunctive relief against the enforcement of an order from the Texas Railroad Commission. Under Texas law, before a permit to drill for oil was granted, the Commission weighed the applicant's interest against the state's interest limiting the number of wells drilled in East Texas in order to conserve oil resources. The Commission's decisions were subject to judicial review in the state courts including the Texas Supreme Court. In light of this "unified method for the formation of policy and determination of cases," and given the danger federal court intervention posed to the success of state policies, the Supreme Court concluded that a "sound respect for the independence of state action" required a federal equity court "to stay its hand." *Id.* 316 U.S. at 333–34, 63 S.Ct. at 1107.

The abstention doctrine announced in *Burford* has developed considerably since

1943. Generally, *Burford* abstention has been employed to avoid unnecessary federal court interference in state areas when competent judicial review is available in state courts. *See Alabama Public Service Comm'n v. Southern R.R. Co.,* 341 U.S. 341, 349–50, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951) ("The usual rule of comity must govern the exercise of equitable jurisdiction by the district court in this case."). The doctrine has been invoked to defer to a state's "overriding interest" in such areas as the regulation of natural resources, eminent domain and education. *BT Investment Managers, Inc. v. Lewis,* 559 F.2d 950, 955 (5th Cir.1977). As a result, *Burford* abstention has come to be described as a doctrine requiring a federal court to abstain "in order to avoid needless conflicts with the administration by a state of its own affairs...." C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4244 (1978). *See also* Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1159 (1974).[7] The First Circuit has recognized the *Burford* abstention doctrine's applicability in certain cases "primarily because of the nature of the state regulatory interest in a particular subject matter and the potential for disruption engendered by federal intervention." *Construction Aggregates Corp. v. Rivera de Vicenty,* 573 F.2d 86, 90 (1st Cir.1978).

In the instant case, the subject matter of Planned Parenthood's action against the judicial defendants is the processing and determination of minors' abortion petitions

---

**7.** Field summarizes several views of *Burford* abstention in her work:

> Professor Wright recognizes "Burford-type abstention" as a separate category of abstention but never states precisely what will invoke it, noting only that its purpose is "to avoid interference with state activities." Similarly, the American Law Institute describes the *Burford* doctrine as a doctrine that the federal court should relinquish jurisdiction where necessary to avoid needless conflict with the administration by a state of its own affairs." Likewise Mr. Libenthal seems to adopt an "all the circumstances" approach. He suggests that *Burford* and *Alabama PSC* "are merely

> examples of the traditional equity cases concerned primarily with the propriety of equitable relief in a given situation in which the Court places greater emphasis on the factor of federal-state harmony"—that the doctrine of those cases "is no more than the doctrine which the Court has used before: No equity court will unnecessarily give extraordinary equitable relief, even though that court has jurisdiction to do so."

Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1159 (1974) (citations omitted).

in the superior courts. Planned Parenthood has based its case on instances of harassment and delay by superior court judges and clerks who implement the Section 12S consent scheme. Thus, in effect, Planned Parenthood's instant action is directed toward the maladministration of the Section 12S judicial consent process in the Superior Courts.

■ Clearly, Massachusetts has a significant interest in the integrity of its superior court system. *See* discussion *supra* p. 806 citing *Middlesex County Ethics Comm'n, supra*, 457 U.S. at 432, 102 S.Ct. at 2521; *Judice, supra* 430 U.S. at 335, 97 S.Ct. at 1217; *Gordon v. Crouchley, supra*, at 799; and *Dostert v. Neely, supra*, at 1153. However, the determination of issues in a federal court such as which superior court judges are "de facto unavailable" to hear minors' abortion petitions, and how long a clerk should take to process a Section 12S petition would constitute an intrusion into the inner workings of the Massachusetts superior courts. Accordingly, under *Burford*, this Court may abstain from deciding such issues because they are matters involving the "internal operations" of a state court and are within the state's power to regulate. *Dawley v. City of Norfolk*, 260 F.2d 647, 647 (4th Cir.1958), *cert. denied*, 359 U.S. 935, 79 S.Ct. 650, 3 L.Ed.2d 635 (1959).

■ Furthermore, were this Court to become involved through its equitable power with the administration of the Massachusetts superior courts, it would certainly be disruptive of the state's policy of managing its own judiciary. The Massachusetts Legislature has established the Supreme Judicial Court as the superintendent of "all courts of inferior jurisdiction...." Mass. Gen.Laws ch. 211 § 3. Under this statutory mandate, the Supreme Judicial Court has the power to remedy errors and abuses in the superior courts. This supervisory power includes the ability to assure the "prompt hearing and disposition of matters pending" in the superior courts, as well as "the improvement of the administration of such courts, and the securing of their proper and efficient administration." *Id.*

The presence of a "supervisory court" specifically authorized under state law to address the type of grievances which form the basis of Planned Parenthood's federal action against the judicial defendants militates in favor of *Burford* abstention. *See Allstate Insurance Co. v. Sabbagh*, 603 F.2d 228, 233 (1st Cir.1979); *Construction Aggregates v. Rivera de Vicenty, supra*, at 92. *See also Alabama Public Service Comm'n, supra*, 341 U.S. at 349–49, 71 S.Ct. at 768 and *Burford, supra*, 319 U.S. at 333–34, 63 S.Ct. at 1107. The deficiencies which Planned Parenthood maintains are present in the processing of minors' abortion petitions in the superior courts are a proper subject for the Supreme Judicial Courts and its expertise under the "superintendency" power. In fact, Justice Liacos has already acted pursuant to this power in 1981 when he issued voluntary guidelines for the disposition of Section 12S petitions in the Superior Courts. The Supreme Judicial Court, therefore, should have the opportunity to hear the evidence which Planned Parenthood has assembled on the Superior Court's performance since 1981 when the voluntary guidelines were issued. After hearing Planned Parenthood's argument, the Supreme Judicial Court may decide to take further action—possibly direct remedial measures against the judicial defendants—as the designated supervisory court under Mass.Gen.Laws ch. 211 § 3.

The opportunity for Planned Parenthood to present its arguments to the Supreme Judicial Court regarding the handling of minors' abortion petitions in the superior courts exists through the *Flanagan* case now pending in Suffolk Superior Court.[8] Accordingly, this Court should stay its hand and allow the Supreme Judicial Court

---

**8.** The pendency of the *Flanagan* case in state court eliminates the possibility that Planned Parenthood will be barred from raising their arguments after this action against the judicial defendants is dismissed from federal court un-
der *Burford*. Thus, the difficult situation which faced the First Circuit in *Allstate Insurance Co. v. Sabbagh*, 603 F.2d 228 (1st Cir.1979), is avoided. In *Allstate*, the First Circuit admitted its "concern" that *Burford* dismissal might "defeat

to function in its supervisory capacity pursuant to the Legislature's express policy. *Cf. Hearn v. Hudson*, 549 F.Supp. 949, 957–58 (W.D.Va.1982) (federal court's refusal to enter an equitable order of expungement is justified under *Burford* where the state has a statutory expungement procedure available to accomplish the same end).

In sum, therefore, this Court should exercise its equitable discretion and abstain from hearing Planned Parenthood's action against the judicial defendants. This action fits squarely within the branch of the abstention doctrine which has developed under *Burford v. Sun Oil Co.* [9] The subject matter of Planned Parenthood's action—the operation of the Massachusetts superior courts—is an area of intense state interest. Massachusetts has designated its Supreme Judicial Court as a supervisory court capable of correcting errors and abuses of process in the lower courts. Federal court interference with the Commonwealth's administration and supervision of its own superior courts would be unnecessarily disruptive. Moreover, Planned Parenthood is not harmed by this Court's decision to abstain under *Burford* and thus dismiss this matter. They are currently involved in the *Flanagan* case a parallel action in the state court system. Planned Parenthood may raise all its federal claims in *Flanagan* and bring their challenge to the operation of the superior courts to the attention of the Supreme Judicial Court.[10] In that forum, under Massachusetts law, remedial action may be taken against the judicial defendants.

### III. *Conclusion*

In summary, Planned Parenthood has brought the judicial defendants, judges and

---

substantive rights" because a state statutory deadline in that case might have affected the plaintiff's ability to bring the matter in state court. *Id.* at 234. Nevertheless, the appeals court stated, "[t]he harsh result this opinion may produce is a by product of the theoretical basis for *Burford* abstention—abstention is proper because it would be improper for the federal court to become involved in the problem. [T]his type of abstention calls for the surrender of federal jurisdiction not its mere postponement.'" *Id.* quoting *Construction Aggregates Corp. v. Rivera de Vicenty*, 553 F.2d at 89. *See also Gordon v. Crouchley*, 554 F.Supp. at 799–800.

9. In Planned Parenthood's argument against the use of *Burford* abstention in this case, they maintain that the doctrine "has never been invoked in any case remotely like this one." *Plaintiffs' Memorandum in Opposition to Motion to Dismiss* at 16. However, one need only look within this Circuit to see that *Burford* abstention has been applied in cases brought under 42 U.S.C. § 1983 involving constitutional issues. *See e.g. Gordon v. Crouchley*, 554 F.Supp. 796 (D.R.I.1982) (Section 1983 action against a Rhode Island Family Court judge dismissed under *Burford*).

In *Stoute v. Berman*, 555 F.Supp. 507 (D.Mass. 1982), a prisoner's rights case brought under 42 U.S.C. § 1983, the District Court abstained from reaching the plaintiff's constitutional arguments concerning the conditions in the Massachusetts Correction Department's protective custody units. *Id.* at 511. Citing *Burford*, the District Court noted that the conditions in those units were the subject of ongoing litigation and a consent decree in the state system. *Id.* citing *Blaney v. Commissioner of Corrections*, (Supreme Judicial Court for Suffolk County) No. J-74-88.

10. In Paragraph 11 of his affidavit submitted in opposition to the judicial defendants' motion to dismiss, John Henn, Planned Parenthood's counsel, articulated a reason why Planned Parenthood chooses to challenge the administration of Section 12S by the Massachusetts superior courts in this Federal Court:

11. Not only do plaintiffs choose to try in this Court the facts underlying both their federal constitution and Massachusetts constitution challenges, but plaintiffs believe that it might well be inappropriate to try such facts in a state court. Part of plaintiffs' evidence, as discussed below, will address the *"de facto"* unavailability of certain Superior Court judges for § 12S proceedings due to the way those judges have conducted proceedings in the past. It would be better not to be forced to present such evidence concerning certain judges to fellow judges of the same court.
Henn affidavit, *supra*, at 4.

This argument must be rejected as a justification for keeping Planned Parenthood's action against the judicial defendants in federal court. Such reasoning overlooks the Supreme Court's admonition that a proper regard for the capability of state judicial systems *"precludes* any presumption that state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1983) (emphasis in original).

clerks of the Massachusetts Superior Courts, before this Federal Court to dispute the manner in which these judicial officers administer Section 12S. Planned Parenthood asks this Court to examine the administration of the Section 12S consent scheme in the superior Court and issue declaratory and injunctive relief. By asking a federal court to intervene in the operation of a state institution, however, Planned Parenthood forces this Court to consider the impact such intervention might have on the proper maintenance of federal-state relations. Applying relevant principles of federalism and comity to this action against members of the state judiciary, it is apparent that federal intrusion into the operation and administration of the Massachusetts Superior Courts is inappropriate. Massachusetts has a significant interest in the management of its courts and the Supreme Judicial Court has the expertise, as well as the legislative mandate to oversee the Superior Courts and take necessary remedial action. Accordingly, given the nature of this action against the judicial defendants, principles of federalism and comity dictate that this Court should abstain and allow the Massachusetts Supreme Judicial Court the opportunity to address Planned Parenthood's concerns through the *Flanagan* case now pending in the state court.

This is not to say that I am unmindful of the sincere and painstaking efforts by the plaintiffs to correct or improve what it perceives to be an unconstitutional application of the statute. The submissions of counsel, including the affidavit and transcript show all too clearly the potential for individual and subjective intrusions into the administration of this most controversial subject. No one can be unaware of the emotion generated by this issue. Viewed in this light, the plaintiffs' approach is too facile and would, in my judgment, create an uncompromising tension between these judicial systems.

If this Court did not abstain, the alternative would be a dangerous encroachment upon the delicate relationship between our federal and state systems. Federalism demands that this Court not become involved with the operation of the state's superior courts. It is not this Court's proper role to supervise, or to be cast "in the role of receiver for a state judicial branch." *Ad Hoc Committee on Judicial Administration v. Commonwealth of Massachusetts,* 488 F.2d 1241, 1246 (1st Cir.1973) citing *Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–751, 27 L.Ed.2d 669 (1971). Planned Parenthood's action against the judicial defendants, however, would steer this Court perilously close to "a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." *O'Shea v. Littleton,* 414 U.S. 488, 501, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974). Accordingly, the judicial defendants' motion to dismiss is granted.

SO ORDERED.